Hitchcock, C. J.
The record shows that this case must have been contested most obstinately in the court of common pleas, at every step of its progress. The action was assumpsit, the declaration containing a special and the common counts. The suit was commenced by capias in May, 1845, and a trial had at the November term of the court, 1846, and a verdict was returned for 'the defendant in error, the plaintiff below. On motion of defendant below, this verdict was set aside and a new trial ordered. At the November term, 1847, another trial was had, and another verdict returned in favor of the plaintiff below. During the progress of this trial, sundry exceptions were taken to decís *436 ions of the court, but no bill of exceptions tendered or signed. After verdict, a motion was made by the defendant below, now plaintiff in error, for a new. trial, because, as claimed, the verdict was against law and evidence, and because of the errors of- the court in the progress of the trial.
This motion was made on the 22d of December, was overruled on the first of January following, and a judgment rendered on the verdict. Thereupon a bill of exceptions was tendered to the court, but for some cause was not signed.’ The court, however, vacated the judgment, and continued the case on the motion for a new trial. At the next succeeding term of the court, in March, 1848, this motion for a new trial was overruled, and judgment entered on the verdict. After which the bill of exceptions now before this court was signed, and filed on the 18th of March, 1848.
Erom this statement it will be seen, that all the errors complained of as having intervened, with the single exception of the error in overruling the motion for a new trial, were committed at the November term of the court, 1847 ;■ but the bill of exceptions calling the attention of this court to those errors, was not allowed until a subsequent term. A question then arises whether this court, under these circumstances, can take any notice of these alleged errors.
The law regulating the allowance of- bills of exceptions is found in the act of March 12th, 1846, “ to regulate the judicial courts and the practice thereof.” (Ohio L. vol. 43, p. 80.) In the second section of this act it is provided, that “ in all cases pending in the court of common pleas, or in the superior court of Cincinnati, either party shall ha-ve the right to ex cept to the opinion of the co-urt, on a motion to direct a non suit, to arrest the testimony from the jury, and also in all cases of motion for a new trial,'by reason of any supposed misdirection of the court to the jury, or by reason that the verdict may be supposed to be against law or evidence, so that such case may be removed by writ of error ; and when a party to a suit, in either of the aforesaid courts, alleges an exception to any opinion, order, or judgment of such court, *437 it snail be the duty of the judges of such court, concurring in such judgment, order, or opinion, if required by such party, during the progress of the case, to sign and seal a bill containing such exception or exceptions before the case proceeds; or, if the party consent, the signing and sealing such bill of exceptions may be suspended until the trial is closed, but said bill of exceptions shall be signed and sealed during the term; and such bill of exceptions, when signed and sealed, shall, if the pa-*y desire it,, be made a part of the record in such suit.”
By the provisions of this section, the party alleging an exception, may, at his election, have the bill signed and sealed during the progress of the trial. Or, if he consent, the signing and sealing may be suspended “ until the trial is closed;” but at all events it must be “ signed and sealed cluring the term.” As to the propriety, nay, as to the absolute necessity of this rule, there can be no controversy. The whole matter should be closed while all the facts and circumstances are fresh in the recollection of the counsel and the court. To postpone it to a subsequent term would, or might, be a fruitful cause of error and mistake. But even if there were doubt as to the policy of the rule, there can be no doubt as to the positive jn-ovisions of the law.
Bearing in mind that this trial was had at the November term of the court of common pleas, 1847, and that the bill of exceptions was not signed, sealed, and filed during that term, but at the next succeeding term, we will now ascertain what exceptions were alleged at the said November term. The fii-st exception was to the action of the court in overruling the objection of the counsel for. the defendant below, to part of an answer given by the witness Murray, to a question propounded by the plaintiff. Several exceptions were alleged to the. action of the court in receiving other evidence, although objected to by defendant below. After the evidence on the part of the plaintiff below was closed, the defendant moved the court to direct the plaintiff to become non-suited. This motion was o /er ruled, and to this decision of the court exception was taken.
*438 The defendant having offered his testimony, and the court having charged the jury, the defendant’s counsel requested the court to instruct the jury further, in eleven different particulars. The court complied in part, refused in part, and in other particulars charged as requested, with some modifi cations. In every particular, where the charge of the court did not comport with the request of defendant’s counsel, exceptions were alleged.
Here the trial “ was closed,” so far as the parties were concerned, during which many exceptions were taken,'but none of them were reduced to form, and “ signed and sealed ” by the members of the court, until the next subsequent term.
Under these circumstances, we are of opinion that we cannot with propriety interfere with the judgment of the court of common pleas for any error supposed to have been committed by that court, in its action in the November term, 1847. But as the record shows that a bill of exceptions was presented to the court at that term, which was not signed and sealed, and that the cause was continued, among other reasons, for the purpose of giving time to examine, and to sign and seal said bill, we have deemed it proper to look into the record, and ascertain whether there was in fact any error committed by the court.
Having this object in view, it will be necessary to refer more particularly to the bill of exceptions than has hitherto been done. Before doing this, however, it will be proper to state more particularly the nature of the controversy between the parties. The action, as before stated, was assumpsit, and the plaintiff was seeking to recover compensation for lumber, which had been by him delivered to one Wingard, and .had in part at least been appropriated by Wingard in the construction of a cabin upon the steamboat Fort Wayne, which at the time was being built for the plaintiff in error, and a man by the name of Scott. The defendant in error plaintiff below, based his claim in part, or principally, upon a written memorandum, in the following words:
*439 “William Person: — I will see you paid for the lumber A. Wingard has received, in notes at four and eight months, after the boat is finished.
(Signed) “ Wm. Hicks.”
In the special count in his declaration, the plaintiff declared, “in consideration that the said Person had furnished one Adam Wingard, at the request of said Hicks, large quantities of lumber of great value, to wit, 01,000, to be used, in part or in whole, in the erection of the cabin of a steamboat called the Fort Wayne, belonging to said Hicks, in whole or in part, the said Hicks made ” the before recited obligation in writing, ete.
This writing is referred to in the bill of exceptions as marked letter A. .
On the trial of the case, the plaintiff proved the delivery of the lumber, and on his books it stood charged to Wingard.
The plaintiff then offered in evidence the deposition of John S. Murray. The first question propounded to the witness was: “Have you at any time heard Captain Hicks, the defendant, say any thing about paying Mr. Person, plaintiff, or securing to him the pay for the lumber, delivered by Person, the plaintiff, to A. Wingard ; if so, state what Captain Hicks said about it ? ” To this question the witness answered: “ In the first place, I did Mr. Wingard’s hauling, and likewise for .other people. This was in the summer of 1844. One day Wingard and I went up to Mr. Person’s to get lumber. Mr. Wingard asked him about some lumber that he wanted to buy of Person. He said he would buy the lumber and give to him, Person, Captain Hicks’s obligation to pay for it. Some time late in the summer of the same year 1 saw Captain Hicks in this city, at the landing, and I asked him if he had been up to the boat, and he told me he liad. I asked him what he thought of it. He said that he liked it much; that Wingard was making a first-rate job of it. He went on then to state that Wingard was a very fair man, and was getting along prosperously, and to help him *440 along he, Hicks, had given him his obligation for a thousand dollars to pay for lumber, that he, Wingardj had purchased of Mr. Person, or in other words, that he, Wingard, had got the lumber to build the boat for Captain Hicks of Mr. Person, and that he, Captain Hicks, had given his obligation to pay for it.”
The counsel for defendant objected to the first part of this answer, or to so much of it as related to the purchase of the lumber by Wingard, and his promise to pay for it in the note of Hicks. The court, hoivever, overruled the objection, and permitted the entire answer to go to the jury. This was excepted to and complained of as error. It will be seen that the object of the plaintiff was to show that the lumber had been furnished to Wingard at the request and upon the credit of Hicks. That part of the answer which was objected to, shows at any rate that the name of Hicks was used as the person whose note was to be given for the lumber, and it might have, been upon this assurance that the credit was given. So far, there was nothing to bind Hicks; but if his conduct afterward was such as to raise a reasonable presumption that the assurance was given by his authority, he must be bound by it. Taking the entire answer together, we are not prepared to say that the court erred in permitting it to go to the jury.
The next exception taken to the ruling of the court, is as to the evidence offered in part to prove the written contract, or contract A, upon which the suit was brought. The effect was to prove the handwriting of Hicks. One witness was examined who had seen him write, and who believed the signature to be his.
Among the papers in . the case were a bond and several affidavits, admitted to have been signed by Hicks, all of which properly belonged to the files in. the case. Three witnesses, who -were experts, were called by the plaintiff, and them papers were put into their hands, and also contract A, and the inquiry was made of them as to the genuineness of the' signature to the latter. This testimony was objected to, *441 on the ground that the witnesses were not acquainted with the handwriting of Hicks, and in giving an opinion, could only judge from comparison of hands. The objection, however, was overruled, and the witnesses permitted to testify.
This action of the court is assigned for error.
As to the question, whether, it is proper to judge of the signature to .a written instrument, by comparing that signature with others which are admitted to be genuine, there is great contrariety of opinion, and in different states of this Union, different rules of decision prevail. The old rule was, that the witness called upon to testify to handwriting, must be acquainted with the handwriting of the individual whose signature was to be proved. He must have seen him write, must have corresponded with him, or must have been acquainted with his handwriting, from having seen writing admitted to be his. In no case could the fact be proved by comparison of han'ds. But in truth, all evidence of handwriting, except where the witness saw the signature made, is derived from comparison. The witness judges of the handwriting presented, by comparing it in his mind with what ’ he has previously seen or known of the handwriting of the individual.
If-it is true, as I suppose it is, that every witness who testifies to the handwriting of another, does it by comparing in his mind the signature to be proved, with the knowledge he has previously acquired of the character of the handwriting of the individual, either by seeing him write, or by the examination of letters or-documents admitted to he his, I cannot see any danger in extending the rule so far as to permit experts to testify, upon actual comparison. Certainly there is more probability of arriving at truth in this manner, than there is in relying upon the opinion of a witness who has, but in a single instance, seen the person write whose signature is to be proven.
But it is unnecessary, as it seems to the court, to settle this question -definitely in the case now before us.
*442 Mr. Greenleaf, in his treatise upon evidence (vol. 2, § 578), says “ this rule, requiring personal knowledge on the part of the witness, has been relaxed in two eases: 1. Where the writings are of such antiquity that living witnesses cannot be had, and yet are not so old as to' prove themselves. Here the course is to produce other documents, either admitted to be genuine, or proved to have been respected and treated and acted upon as such by all parties, and to call experts to compare them, and to testify their opinion concerning the genuineness of the instrument in question. 2. Where other writings, admitted to be genuine, are already in the case. Here the comparison may be made by the jury, with or without the aid of expertsIn the case now before the court, there were such writings in the case, and it was with these writings the witnesses were called upon to compare the signature to the instrument which was the foundation of the suit. In our opinion, the court of common pleas did not err in admitting this testimony.
After the plaintiff had closed his testimony, the defendant moved the court to direct judgment of non-suit to be entered against the plaintiff. This motion the court overruled, and this ruling of the court was excepted to, and is assigned for error.
Where no evidence is introduced by a plaintiff conducing to prove the issue, or where the evidence by him introduced is such as to show clearly that he has no cause of action, it is the duty of the court to direct judgment of non-suit. But if the evidence introduced is appropriate to the issue, although it may be slight, and not sufficient in the opinion of the court to entitle the plaintiff to a verdict, still the jury should be per mitted to pass upon it, and it would be wrong in the court to decide a- non-suit. In the case under consideration, there was evidence of this character, and the court very properly overruled the motion for a non-suit.
The defendant then moved the court to rule out the paper marked A, under the first count in the declaration. This *443 motion was overruled by the court, and this decision was excepted to.
The paper marked A, is the instrument described in the first count of the declaration, and why it should have been ruled out, it is impossible for this court to conceive. It could not be on account of variance, for it is recited in the declaration, word for word and letter for letter. If there was any other cause, we have not been able to discover it, and the counsel for plaintiff in error have not taken the trouble to inform us.
The evidence being closed on the part of the plaintiff below, the defendant introduced and read sundry depositions, and also offered to read, and was permitted by the court to read, several affidavits which had been made by the defendant in the case. Witnesses were also examined in court. During the progress of the trial, the deposition of Wingard had been read, subject to objection, and several depositions to invalidate his testimony. This deposition of Wingard, and the testimony to impeach it, were eventually excluded from the jury.
After the testimony was closed, the court proceeded to give certain instructions to the jury. After which, the defendant’s counsel requested the court to instruct further as to eleven particlars, which are specified in the bill of exceptions. Some of these instructions were given, some withheld, and some given in a modified form. Wherever the court failed to instruct specifically as requested, exceptions were taken, and such failure is assigned for error.
The second instruction, which the court was requested to give the jury, was, “ that the paper marked A, and described in the first count in the declaration, is not admissible under, that count, and so far as that count is concerned, must be disregarded.”
This request, to say the least of it, was not very respectful to the court. This paper was originally given in evidence under the first count; a motion to rule .it out as evidence under that count had been overruled, to which overruling *444 exception had seen taken, and now the court were, in substance, requested to instruct the jury that these decisions were all wrong, and that they must disregard the paper. The court very properly refused any such instruction.
The third instruction requested was, “ that said paper is not binding as a guarantee, because it does not, on its face, contain a sufficient consideration.” In answer to this request, the court instructed the jury, “ that no recovery could be had upon paper A, as a guarantee under the state of the pleadings, it having been declared on as an original, independent undertaking.
The instruction requested, was one which could not with propriety have been given, even had the paper been sued upon as a guarantee; as it was not thus sued upon, it was immaterial whether the consideration was expressed upon the face of the paper or not.
The ninth instruction requested was, “ if in the sale of the lumber, credit was given by Person to Wingard for this lumber, and he was bound to Person for it, plaintiff cannot recover in this suit.” To this request, the court responded, “ that if the credit was given to Wingard solely, and he alone bound in the first instance, no recovery could be had against Hicks, although he might afterward have promised to pay Wingard’s liability. That it was necessary that Hicks should be originally bound, either solely or jointly, with Wingard, to make him liable in the present suit.”
It seems to this court, that this was a proper response to the request, and. that the opinion so expressed was in consonance with the principles of law. This response, too, might be well taken as an answer to the sixth instruction requested, which was refused.
The eleventh instruction requested is, “ that the plaintiff cannot recover unless he prove that Wingard had authority to make the precise contract which it is pretended he did make, that is, to pay in notes, at six and eight months, and that the authority was given before Wingard purchased the lumber.”
*445 Upon this point the court charged, “ that if Hicks was originally liable, and in consideration of such liability, afterward agreed to pay, in six and eight months, he would be liable, although no time of payment was expressed or fixed in the original contract.”
We see nothing improper or illegal in this part of the charge of the court, nor in fact in any part of it. It was as favorable to the plaintiff in error as could have been reasonably desired.
Upon examination of the whole record, up to the time the case was finally submitted to the jury, we find nothing erroneous in the ruling of the court of common pleas. It follows that the plaintiff in error has lost nothing in not having his bill of exceptions signed and sealed within the term in which it is said that the alleged errors were committed.
It remains now to examine the subsequent proceedings. As before stated, the verdict was returned at the November term of the court, 1847, and the case continued, on a motion for a new trial, until the next succeeding February term. At the February term this motion was overruled and judgment entered upon the verdict. To this ruling of the court exception is also taken, and it is alleged.for error that the court overr ruled this motion.
Among the reasons assigned for a new trial, were the several alleged errors committed by the court during the progress of the trial, which had been already considered and disposed of. Upon these it is unnecessary to say any thing further. It is further assigned as cause for a new trial, that the verdict was against the charge of' the court, against law, and against the evidence of the case. Wherein the verdict was, against the charge of the court, or against law, we have not been able to discover. The question remains, was it against the evidence in the case ?
Before entering upon this inquiry, it may be well to remark, that the court before whom a trial is had, where the *446 witnesses appear and are examined, where the hearing of any specific testimony is seen and understood, can judge with much more propriety whether a new trial should be granted in a given case, than can an appellate court, to which nothing is presented but-a statement of facts proved. Still the legislature have provided that, in a proper case, this court may reverse the decision of an inferior tribunal, where that tribunal has refused to grant a new trial,, when the verdict is supposed to be against “law or evidence.”
Before this court can determine whether a verdict in the court of common pleas is “ against evidence,” we must have, not a part only, but the whole evidence which was before the jury, on the trial, and this must be brought before us by a bill of exceptions, made part of the record. I say, made part of the record. For it is only upon inspection of the record that a court of error acts. All the evidence before the jury must be embodied in or made part of the bill of exceptions. It will not do, as is sometimes attempted to be one, to refer to the records of courts, or records, of deeds, and attempt to make them parts of bills of exceptions. It will not do to refer to depositions on file, by the names of the defendants, or by artificial marks upon the depositions themselves, without something beyond this. They must be attached to or made part of the bill of exceptions, so that when a record of the case shall be made, they-can be introduced into that record as constituting a part of the case. Such preparation of bills of exceptions may be attended with much labor on the part of counsel, and with much expense on the part of clients, and probably the labor and expense will be avoided except where there is palpable ground for the belief that wrong and injustice have been done. This strictness is not required where the motion for a new trial is based upon an error committed by the court, in the progress of the trial, but only where the complaint is, that the verdict was “ against evidence.” In such case we must haye all the evidence before us.
*447 Now how is it in the case under consideration?' There was much evidence and many depositions before the court of common pleas.. This is apparent from the bill of exceptions. In that bill it is stated, that after the plaintiff had closed his testimony, “ the defendant offered and read the deposition of George M. Keirnan, Ferdinand C. Brachman, Joseph Scott, and Clifford G. Wayne, being in one batch, and marked L on the back.” But these depositions are not attached to the bill of exceptions, nor is there any statement that they are made a part thereof. Strictly speaking, it gives this court no better information than it would have had, had the statement been that these individuals had been examined in open court, without stating their testimony. The same difficulty exists with respect to other depositions named in the bill of exceptions. The facts of the case are not properly before us.
Notwithstanding this, however, we have looked into these depositions, so far as we could find them. At least one referred to is not with the papers in the case. From this examination, it appears that the evidence was conflicting. Possibly, had the case been submitted to this court upon the facts, we should have found that issue in favor of the defendant. The verdict, however, cannot with propriety be said to be “ against the evidence,” although, possibly, it may have been against the weight of evidence. But there had been two trials in the court of common pleas, and two concurring verdicts. Under these circumstances, we think that court very correctly refused a third trial.

The judgment is affirmed